Mark Lindquist (WA #25076)
mark@hlg.lawyer
Herrmann Law Group
505 Fifth Ave S, Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT IN AND FOR
THE WESTERN DISTRICT OF WASHINGTON IN SEATTLE**

| | |
|---|---|
| DONNITTA SINCLAIR, mother of deceased HORACE LORENZO ANDERSON, JR., individually,<br><br>Plaintiff,<br><br>Vs.<br><br>CITY OF SEATTLE, a municipality,<br><br>Defendant. | No. 2:21-cv-00571<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, through her attorneys at Herrmann Law Group, hereby alleges as follows:

**I. SYNOPSIS**

1. Plaintiff Donnitta Sinclair seeks damages arising from the intentional and negligent conduct of the City of Seattle ("the City"), which resulted in the death of her 19-year-old son, Horace Lorenzo Anderson, Jr.

2. On or about June 8, 2020, the City abruptly abandoned the East Precinct of the Seattle Police Department ("SPD") in Capitol Hill.

3. Protestors used barriers left behind by police to create a "no-cop" zone in an area known as the Capitol Hill Organized Protest or "CHOP."

4. This decision by the City was well publicized and invited lawlessness and created a foreseeable danger.

COMPLAINT - 1

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

5. Mayor Jenny Durkan ("the Mayor") spun CHOP as a "block party" and "summer of love," suggesting a visit would be fun and safe.

6. Lorenzo Anderson, the 19-year-old special needs son of the Plaintiff, visited CHOP on or about June 20, 2020. He was shot in CHOP just outside Cal Anderson Park.

7. Seattle Police Department ("SPD") and Seattle Fire Department ("SFD") units were standing by about a block and a half away from where Anderson lay bleeding, but failed to assist because of botched communication between the two City agencies and lack of sufficient planning and preparation.

8. After SPD and SFD failed to assist, CHOP volunteers transported Anderson from CHOP to Harborview Medical Center in a pick-up truck.

9. He died of his wounds at the hospital.

## II. PARTIES

10. Plaintiff Donnitta Sinclair is the biological mother of Horace Lorenzo Anderson, Jr., deceased.

11. Defendant City of Seattle is a municipality incorporated in the State of Washington. The Seattle Police Department is a division of the City.

## III. JURISDICTION AND VENUE

12. This court has subject matter jurisdiction over this case because this action presents federal questions and seeks to redress deprivation of rights under the United States Constitution pursuant to U.S.C. Section 1983.

13. Venue is proper in this District under 28 U.S.C. Section 1391 because the events giving rise to these claims arose in the Western District of Washington, specifically in the city of Seattle.

14. To the extent these causes of action are also brought pursuant to Washington State statutes, they are so related to the federal claims they form part of the same controversy or case.

15. A tort claim was filed with the City more than 60 days ago.

COMPLAINT - 2

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

## IV. FACTS ALLEGED

16. After the City abandoned SPD's East Precinct on or about June 8, 2020, CHOP participants essentially seized a roughly sixteen-block area of Capitol Hill, including Cal Anderson Park.

17. SPD left behind barricades when they surrendered the area. CHOP participants used these barriers to block off streets from general traffic.

18. Local business owners and others observed CHOP participants carrying guns on public streets and in Cal Anderson Park at all hours.

19. Cal Anderson Park was turned into a massive tent city for CHOP participants and the general public was not allowed to use the park.

20. The City enabled CHOP by providing portable toilets, lighting, and other support, including modifying protocols of SPD and SFD.

21. The City had no effective plan for providing police protection, fire protection, or other emergency services into the surrendered area.

22. Violence, vandalism, open drug use, and a collection of other crimes predictably proliferated in CHOP.

23. Local business owners were threatened with retaliation if they attempted to paint over ubiquitous graffiti.

24. SPD adopted a policy and practice of not entering the area except in the case of life-threatening crimes, and sometimes not even then. CHOP became known as a "no-cop" zone.

25. After SPD and the City deserted the area, CHOP participants created a "medical tent" in an outdoor area of the Rancho Bravo restaurant on Pine Street just outside Cal Anderson Park.

26. On June 11, SPD Chief Carmen Best ("Police Chief") publicly admitted, while standing beside the Mayor, "In the first day of SPD not having access to the precinct, response times for crimes in progress were over 15 minutes, about three times as long as the average …"

COMPLAINT - 3

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

27. The same day, the Mayor spun CHOP as "a summer of love" and "block party" in an interview with CNN, implying it was fun and safe.

28. City Council Member Kshama Sawant continually framed CHOP as a "peaceful occupation" even after known violence.

29. On or about June 20, Lorenzo Anderson visited CHOP. That same night, Marcel Long visited CHOP. Anderson and Long apparently had a history of antagonism for about a year.

30. Long and others he was with correctly believed CHOP to be a "no-cop" zone. Long was armed with a handgun.

31. Video from a local business shows Long talking to Anderson. When Long pulls a gun, Anderson turns and walks quickly away. Long is momentarily held back by others, but breaks away to run after Anderson. Long catches up to Anderson and shoots him at least four times at approximately 2:19 am.

32. With no assistance in sight from SPD or SFD, CHOP participants carried Anderson to the nearby Rancho Bravo "medical tent" on East Pine Street. He had a pulse when they laid him down on a table.

33. An SFD Medic One ambulance was standing by about a block and a half away from where Anderson lay bleeding.

34. Video circulating on social media shows a man imploring the medics to help Anderson. "You could be saving his life. You could be saving his life right now. Sir, please, explain to me what's going on. He's dying. He needs your help…."

35. One of the medical responders says into his radio, "We have a number of citizens who want us into the location. I just want to make sure we're not cleared to move into the location."

36. Medic One was apparently waiting for a green light from SPD, but SPD was confused about the location of SFD and medics. Miscommunication between the two agencies caused a delay of approximately 20 minutes.

COMPLAINT - 4

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

37. At about 2:35 am, with still no assistance in sight, Anderson was loaded into a civilian pick-up truck by CHOP volunteers. "We saw red lights from the fire department up on Broadway and then, after some time, it became pretty clear the medics weren't coming in," said a CHOP volunteer.

38. At about 2:45 am, Anderson arrived at Harborview. He was pronounced dead at 2:53 am.

39. Anderson is survived by his mother, the Plaintiff, and his father.

40. The Police Chief and other city agents made public statements claiming CHOP participants prevented fire and police from rescuing Anderson. Evidence shows otherwise. In fact, CHOP participants were begging City personnel to enter and help Anderson.

41. When police finally entered CHOP, approximately 20 minutes after the shooting, videos show they were met with cries of "the victim is gone" and "they took him to the hospital." SPD's delayed response appears to be the primary source of the crowd's hostility.

42. Long was charged with Murder in the First Degree by the King County Prosecutor's Office. He is still at large.

43. On or about June 29, there was another shooting in CHOP. A 16-year-old boy was killed, and a 14-year-old was seriously wounded.

44. In the course of nine days in CHOP, there were two homicides and several shootings, as well as other crimes such as robbery and sexual assault. In the six months before CHOP, there were no homicides in the area. In 2019, there were three homicides in the entire Capitol Hill neighborhood.

45. After the second CHOP homicide, the Police Chief said, "…unfortunate that we have yet another murder in this area identified as CHOP…. And we've had multiple other incidents – assaults, rape, robbery, and shootings…. So this is a real problem. And I would question why we could continue to allow this to happen."

COMPLAINT - 5

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

46. The Police Chief denied giving the order to desert SPD's East Precinct. The Mayor also appeared to deny giving the order. Someone in City leadership gave the order and numerous City officials allowed, enabled, and even encouraged CHOP to continue despite the foreseeable danger and resulting violence.

47. On June 24, business owners in the CHOP filed a lawsuit against the City for this "unprecedented decision to abandon and close off an entire city neighborhood, leaving it unchecked by the police, unserved by fire and emergency health services …" *Hunters Cap. LLC v. City of Seattle*, No. C20-983 TSZ, 2020 WL 6120008 (W.D. Wash. Oct. 16, 2020)

48. On July 1, the Mayor issued an executive order to retake the SPD precinct and CHOP. In the process, there was no significant violence or serious resistance. This confirms what common sense suggests: the City could have and should have retaken the area and restored public safety before the murder of Anderson.

## V. RESERVATION

49. The investigation remains ongoing. Discovery may reveal additional causes of action against or establish that other, so far unnamed, persons or entities may also have been at fault.

50. Further, the exact nature and full extent of injuries and damages are unknown and there may be additional claims and/or causes of action.

51. To the extent the Court will allow, Plaintiffs reserve the right to subsequently amend this complaint accordingly.

## VI. ALL CAUSES OF ACTION

52. All facts alleged in every paragraph above are incorporated into every cause of action alleged hereinafter as though they were fully set forth.

53. The City is responsible for its own policy or customs, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, which caused the injuries described herein.

54. Actions of City employees were ratified by City officers, including the Police

COMPLAINT - 6

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

Chief and the Mayor.

55. Actions of the defendant constituting every cause of action below proximately caused damages suffered by this plaintiff as described below.

56. The defendant's actions and failures amounted to deliberate indifference to federally protected rights. Therefore, the plaintiff is entitled to punitive damages.

57. Under 42 USC §1988, Plaintiff is also entitled to attorney fees.

## VII. FIRST CAUSE OF ACTION

### 14th Amendment Due Process and Parental Rights Violated

58. This action is brought by Donnitta Sinclair in her individual capacity as mother of the decedent.

59. The City's affirmative acts and failures to act, including abandoning the SPD East Precinct and CHOP, created a danger.

60. The City's acts and failures to act, including a policy where police only responded to "life-threatening" crimes in CHOP, and sometimes not even then, created a lawless "no-cop" zone.

61. Violence was foreseeable when the City abandoned police, fire, and other essential services in CHOP.

62. This City-created danger was known to city officials, including the Mayor and Police Chief. City officials demonstrated deliberate indifference to this danger.

63. Knowing this danger, the Mayor and other city officials encouraged Anderson and others into the area by referring to it as a "summer of love" and a "block party" and similar spin.

64. Long and others brought firearms into CHOP as they correctly believed the City had created a "no-cop" zone.

65. The City's acts, and failures to act, demonstrated deliberate indifference to the constitutional rights a parent has in the companionship of their children.

COMPLAINT - 7

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

66. The City's actions and failures were the proximate cause of the death of Lorenzo Anderson.

## VIII. SECOND CAUSE OF ACTION

### Negligence

67. The City had a duty to act reasonably and not create a danger. Further, the City had a duty to act reasonably and prepare for predictable dangers.

68. Through respondeat superior, the City is responsible for the actions of officers and employees performed in the scope of their employment.

69. By abandoning CHOP and approving a "no-cop" zone where police only entered CHOP in the event of "life-threatening" crimes, and sometimes not even then, the City created a danger. Violence was foreseeable, but no working response was prepared.

70. When Anderson was shot, a Medic One unit was standing by about a block and a half away. A CHOP participant is on video begging the medics to assist. "You could be saving his life right now. Sir, please, explain to me what's going on. He's dying. He needs your help…."

71. Because of negligent miscommunication between ill-prepared City agencies, medics failed to get approval to enter CHOP to assist Anderson in a timely manner.

72. Approximately 26 minutes after he was shot, Anderson arrived at the hospital in a civilian pick-up truck. Harbor Medical Center is only one mile away from where Anderson was shot.

73. Anderson should have been in the hands of professional medics almost immediately and transported to the hospital in a matter of a few minutes. Every minute matters in treating gunshot wounds.

74. The City's negligence proximately caused Anderson's death.

## IX. DAMAGES

75. As a result of these causes of action, Plaintiff lost the love, care,

COMPLAINT - 8

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

companionship, and familial relationship between mother and son.

76. Plaintiff suffered and continues to suffer severe grief, emotional distress, and mental anguish.

## X. PRAYER FOR RELIEF

77. WHEREFORE, plaintiffs pray for judgment against defendant awarding plaintiffs the following, the exact nature and full extent of which to be proven at trial:

- Compensatory damages;
- Pursuant to 42 USC §1983, punitive damages;
- Pre-judgment and post-judgment interest;
- Pursuant to 42 USC §1988, attorneys' fees and costs; and,
- Such other relief as the Court deems just and equitable.

## XI. DEMAND FOR JURY TRIAL

78. Plaintiffs demand trial by jury on all issues.

Dated this 29th day of April, 2021.

**HERRMANN LAW GROUP**

*/s/ Mark Lindquist*
_____
Mark Lindquist (WA #25076)
Lara Herrmann (WA #30564)
Crystal R. Lloyd (WA #46072)
Attorneys for Plaintiff

COMPLAINT - 9

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710