Mark Lindquist (WA #25076)
mark@hlg.lawyer
Herrmann Law Group
505 Fifth Ave S, Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT IN AND FOR**
**THE WESTERN DISTRICT OF WASHINGTON IN SEATTLE**

| | |
|---|---|
| DONNITTA SINCLAIR, mother of deceased HORACE LORENZO ANDERSON, JR., individually,<br><br>Plaintiff,<br><br>Vs.<br><br>CITY OF SEATTLE, a municipality,<br><br>Defendant. | No. 2:21-cv-00571<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF SEATTLE'S MOTION TO DISMISS |

## I.   INTRODUCTION

Defendant City of Seattle affirmatively abandoned a section of the city and deprived citizens of essential services, including police protection. This extraordinary decision created an area that became nationally known as the Capitol Hill Occupied Protest or "CHOP."

The Defendant enabled, encouraged, and extended CHOP. Aware of the dangers of creating a "no-cop zone," City officials nonetheless lured visitors, including Lorenzo Anderson, a special needs teenager, into the area by referring to it as "a block party" and "summer of love." Anderson was shot and killed in the CHOP.

Anderson's mother, Donnitta Martin, brings this action to hold the Defendant accountable and secure justice for her son. While government entities are not generally

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 1

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

liable for criminal acts of third parties, there are exceptions to the general rule. This case squarely meets the requirements of the "state-created danger" exception.

## II. FACTS ALLEGED

On or about June 8, 2020, the Defendant abandoned Seattle Police Department's ("SPD") East Precinct.  CHOP participants essentially seized a roughly sixteen-block area of Capitol Hill. Dkt. #8 ¶ 3.

SPD left behind barricades when they surrendered the area. CHOP participants used these barriers to block off streets from general traffic. Local business owners and others observed CHOP participants carrying guns on public streets at all hours.  *Id.* ¶ 3.

City officials enabled CHOP by providing portable toilets, lighting, and other support, including modifying protocols of SPD and SFD.  Further, the Defendant had no effective plan for providing police protection, fire protection, or other emergency services into the surrendered area. Violence, vandalism, open drug use, and a collection of other crimes predictably proliferated in CHOP.  *Id.*  ¶ 3.

SPD adopted an extraordinary policy and practice of not entering the area except in the case of life-threatening crimes, and sometimes not even then. CHOP became known as a "no-cop" zone. *Id.*  ¶ 3.

On or about June 11, SPD Chief Carmen Best ("Police Chief") publicly admitted, while standing beside the Mayor, "In the first day of SPD not having access to the precinct, response times for crimes in progress were over 15 minutes, about three times as long as the average …" *Id.*  ¶ 4.

The same day, the Mayor spun CHOP as "a summer of love" and "block party" in an interview with CNN, implying it was fun and safe. City Council Member Kshama Sawant publicly framed CHOP as a "peaceful" occupation even after it became violent. *Id.* ¶ 4.

On or about June 20, Lorenzo Anderson, a special needs teenager, visited CHOP. That same night, Marcel Long visited CHOP. Anderson and Long apparently had a

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 2

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

history of antagonism. Long and others he was with correctly believed CHOP to be a "no-cop" zone. Long was armed with a handgun. *Id.* ¶ 4.

Video from a local business shows Long talking to Anderson. When Long pulls a gun, Anderson turns and walks quickly away. Long is momentarily held back by others, but breaks away to run after Anderson. Without any possibility of police intervention, Long catches up to Anderson and shoots him at least four times at approximately 2:19 am. *Id.* ¶ 4.

CHOP participants carried Anderson to the nearby Rancho Bravo "medical tent" on East Pine Street. He apparently had a pulse when they laid him down on a table. An SFD Medic One ambulance was standing by about a block and a half away from where Anderson lay bleeding. *Id.* ¶ 4.

Video circulating on social media shows a man imploring the medics to help Anderson. "You could be saving his life. You could be saving his life right now. Sir, please, explain to me what's going on. He's dying. He needs your help…." *Id.* ¶ 4.

At about 2:35 am, with still no assistance in sight, Anderson was loaded into a civilian pick-up truck by CHOP volunteers. At about 2:45 am, Anderson arrived at Harborview. He was pronounced dead at 2:53 am. *Id.* ¶ 5.

During nine days in CHOP, there were two homicides and several shootings, as well as other crimes such as robbery and sexual assault. In the six months before CHOP, there were no homicides in the area. In 2019, there were three homicides in the entire Capitol Hill neighborhood. *Id.* ¶ 5.

The Police Chief denied giving the order to desert SPD's East Precinct. The Mayor also appeared to deny giving the order. Someone in City leadership gave the order and numerous City officials allowed, enabled, ratified, and even encouraged CHOP to continue despite the foreseeable danger and resulting violence. *Id.* ¶ 6.

On June 24, business owners in the CHOP filed a lawsuit against the Defendant for this "unprecedented decision to abandon and close off an entire city neighborhood, leaving it unchecked by the police, unserved by fire and emergency health services …"

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 3

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

*Hunters Cap. LLC v. City of Seattle*, No. C20-983 TSZ, 2020 WL 6120008 (W.D. Wash. Oct. 16, 2020). *Id.* ¶ 6.

The Mayor's text messages on her city-issued work phone have reportedly disappeared for a ten-month period, from August of 2019 to June 25, 2020. Text messages of other city officials, including the Police Chief and Fire Chief, are also reported missing from the same period. Dkt. #8 ¶ 6.

On July 1, the Mayor issued an executive order to retake the SPD precinct and CHOP. In the process, there was no significant violence or serious resistance. *Id.* ¶ 6.

## II.  LEGAL STANDARD

For purposes of reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court is to accept plaintiff's allegations as true "and construe them in the light most favorable" to the plaintiff, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), dismissing the complaint only if it fails "to 'state a claim to relief that is plausible on its face.'" Id. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  This involves "assuming all facts and inferences in favor of the nonmoving party." Dismissal is appropriate only "it appears beyond doubt that [plaintiff] can prove no set of facts to support [their] claims.'" *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003)).

## III.  ARGUMENT

Plaintiff agrees with Defendant that the question before the Court is whether the alleged facts of this case, taken in a light most favorable to the Plaintiff, could plausibly satisfy the "state-created danger" exception to the general rule governments aren't liable for criminal acts of private individuals.

### A.  City Officials Created the Danger

Three elements must be met to satisfy the state-created danger exception: 1) the defendant's affirmative actions created an actual and particularized danger the plaintiff would not have otherwise faced, 2) the resulting harm to the plaintiff was foreseeable,

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 4

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

and 3) the defendant acted with "deliberate indifference" to the danger. *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).

At this point, the Defendant does not contest that the resulting harm was foreseeable, element number two. The Defendant is correct to not contest this because the evidence goes beyond foreseeability to seeability. The Defendant should have foreseen the danger, and then did see the danger, and still enabled the danger.

Therefore, Plaintiff address the other two elements, beginning with the first.

**i.      Defendant's affirmative acts placed the Plaintiff in actual and particularized danger he would not otherwise have faced.**

The state-created danger exception in the 9th Circuit starts with *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989).  In *Wood*, an officer left a woman stranded in a high crime area and was raped. *Wood* and subsequent decisions examine whether the government actors affirmatively created the danger as opposed to merely standing by or "playing no part" in creating the danger. *Wood* at 590, quoting *DeShaney v. Winnebago Cty. Soc. Servs. Dept.*, 489 U.S. 189 (1989).

Here, the Defendant did not merely stand by and allow CHOP, but affirmatively enabled the CHOP takeover by abandoning the SPD East Precinct. Dkt. #8 ¶ 1. The Defendant further enabled CHOP by providing portable toilets, lighting, and other support. *Id.* ¶ 3.  City officials even modified protocols of SPD and the Seattle Fire Department ("SFD") to create a "no-cop" or "no response" zone in the CHOP. *Id.* ¶ 3. A series of affirmative acts by the Defendant created the CHOP danger. Without these acts, Anderson would not have faced the danger he did.

Defendant argues *Johnson v. City of Seattle* is on point, but there was little or no affirmative conduct by the city in *Johnson*. Attempting to control a crowd, SPD switched from a more aggressive plan to a more passive one, which the court held did not put plaintiffs in a worse position than having no plan at all.  "Plaintiffs have failed to offer evidence that the Defendants engaged in affirmative conduct that enhanced the dangers" of the situation.  *Johnson* at 641.

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 5

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

Here, there is ample evidence of affirmative conduct that enhanced the dangers of the CHOP.  Specifically, the Defendant abandoned a police precinct, provided toilets and lighting and other support to CHOP, modified SPD protocols to create a "no-cop zone," and lured citizens into the area by referring to it as "peaceful," a "summer of love," and "a block party." Dkt. #8 ¶ 2-3.  Taken in its entirety, this conduct goes far beyond the passive SPD plan in *Johnson*.

While the facts of this case are different than *Johnson*, *Wood*, and *Grubbs*, the state-created danger principles still apply. As the Court summarized it in Grubbs, "The Defendants, like the officer in *Wood*, thus used their authority as state correctional officers to create an opportunity for Blehm to assault L.W. that would not otherwise have existed." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). Here, city officials created the opportunity for Long to kill Anderson. Dkt. #8 ¶ 1-9.

Anderson and Long had a history of antagonism. Long did not choose to shoot Anderson until the opportunity arose in the "no-cop zone' of CHOP where Long apparently, but mistakenly, believed he could chase down and kill someone with impunity. The affirmative acts of city officials presented Long with this opportunity. *Id.* #8 ¶ 4, 8.

Defendant argues danger must be "particularized," but an increased risk of violent crime is sufficiently particular for purposes of the "state-created danger" doctrine.  Cf. *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989). Here, a special needs teenager was lured into the "peaceful" CHOP "block party" during a "summer of love" to check it out. Dkt. #8 ¶ 8.

Additionally, Defendant suggests the doctrine applies only where the state creates a danger targeting the injured party. While many state-created danger cases happen to involve conduct by a single police officer or other state actor creating risk for a targeted individual, this does not mean the doctrine is limited to such circumstances.

CHOP was a danger affirmatively created, enabled, encouraged, and extended by city officials. The danger began when the Defendant abandoned the SPD East

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 6

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

Precinct and did not end until the Defendant reclaimed the area after two homicides, several shootings, and numerous other crimes, including sexual assault and robbery. Dkt. #8 ¶ 1, 5, and 6.

The Defendant's affirmative acts created the actual and particularized danger.

ii. **Defendant was deliberately indifferent to the known danger.**

Deliberate indifference is demonstrated when defendants have "actual knowledge of, or willfully ignore, impending harm." *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996). All plaintiffs must plausibly allege is the defendant "disregarded a known or obvious consequence of his action." *Martinez*, 943 F.3d at 1274.

The Defendant met and exceeded this standard in this extraordinary case.

City officials should have recognized the danger of cutting off essential services and creating a "no-cop zone" in an urban area. This is common sense. As the court noted in *Wood*, "Moreover, the inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense." *Wood* at 1219.

Even if city officials didn't have actual knowledge their bizarre decisions would have consequences and invite harm, they willfully ignored the obvious. Further, Chief Best sounded warnings. On the same day the Mayor spun CHOP as a "summer of love" and a "block party," Chief Best pointed out the dangers of CHOP, including long response times for crimes in progress. Dkt. #8 ¶ 2, 4.

Defendant argues city officials took steps to "mitigate the public safety risks" by, for example, providing lighting to CHOP and modifying SPD protocols. (Def. Mtn at 10.) This is akin to arguing the city could mitigate the risks of street racing in residential neighborhoods by providing lighting and NASCAR pit crews. Contrary to Defendant's argument, the city *increased* public safety risks by supporting CHOP and by modifying SPD protocols, which resulted in a "no-cop zone" where police only responded to life-threatening emergencies and sometimes not even then. Dkt. #8 ¶ 3, 4, and 7.

Furthermore, the Defendant had no effective plan in place to deal with the predictable violence. Nearby Medic One units stood by even after Anderson was shot

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 7

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

and civilians were literally begging the medics to assist. Police failed to escort the medics who apparently refused to go into CHOP without police support. Dkt. #8 ¶ 4, 5, and 8.

Plausible evidence indicates city officials either knew of the dangers or willfully ignored the dangers and still enabled the CHOP, which demonstrates deliberate indifference. Dkt. #8 ¶ 1-9

### B. Court's Decision in *Hunters* Should Inform this Court's Analysis

Defendant argues the *Hunters Capital* v. *City of Seattle*, 499 F. Supp 3d 888 (W.D. Wash 2020) decision "should not affect this court's analysis." (Def. Mtn. at 16-19.) Plaintiff disagrees. While there are differences between the cases, the similarities are more striking and legally significant.

In determining *Johnson* did not control, the Court in *Hunters* found the defendant's actions, including the "no response zone" in CHOP, "foreseeably placed Plaintiffs in a worse position than they would have been absent any City intervention whatsoever." Additionally, the Court found Plaintiff's allegations "are also sufficient to show that the city acted with deliberate indifference." *Id.* at 902 & n.5.

Here, the same is true. Because the defendant enabled CHOP and created a "no response" or "no cop" zone, Plaintiff was in a worse position than if city officials did nothing and just let the CHOP play out without enabling support from city officials.

Defendant mistakenly claims "Plaintiff does not allege that Mr. Anderson would have been better off without City intervention," apparently because Plaintiff alleges city officials "should have retaken and restored public safety before the murder of Anderson." (Def. Mtn. at 17.) Defendant conflates enabling a danger with eliminating a danger. The former is bad. The latter is good. Plaintiff has repeatedly alleged the former. The latter did not happen until it was too late.

The Court in *Hunters* found Plaintiff's allegations, which are often exactly the same as Plaintiff's allegations here, sufficient to state a claim under the state-created danger exception. While *Hunters* is not binding, it is persuasive, especially as both cases arise from the same decisions and acts of city officials.

No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 8

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

What distinguishes *Hunters* from this case is property rights versus human life.

Finally, Defendant argues that finding for the Plaintiff will "impose constitutional liability on the city for all crime that occurred within the city." (Def. Mtn. at 2.) *Hunters* has not done this and neither will this case.

With the exception of several apocalyptic Hollywood movies, it is essentially unprecedented for city officials to surrender territory to lawlessness as happened here. Because the CHOP presents a uniquely weird scenario, *sui generis*, neither *Hunters* or this case will open the proverbial floodgates of litigation as Defendant fears.

## IV.   CONCLUSION

Plaintiff asks this Court to deny Defendant's motion to dismiss because, construing the pleadings in a light most favorable to the Plaintiff, there is plausible evidence of a state-created danger and therefore the Defendant could be held liable.

Dated this 16th day of August, 2021.

**HERRMANN LAW GROUP**

*/s/ Mark Lindquist*

_____

Mark Lindquist (WA #25076)
Attorney for Plaintiff
No. 2:21-cv-00571
PLAINTIFF'S RESPONSE TO DEFENDANT CITY
OF SEATTLE'S MOTION TO DISMISS - 9

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710