HONORABLE JOHN C. COUGHENOUR
HON. J. RICHARD CREATURA

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

DONNITTA SINCLAIR, Mother of Deceased
HORACE LORENZO ANDERSON, JR.,
individually,

          Plaintiff,

          v.

CITY OF SEATTLE, a municipality,

          Defendant.

Case No. 2:21-cv-00571-JCC-JRC

THE NATIONAL POLICE
ASSOCIATION'S NOTICE OF MOTION
AND MOTION FOR LEAVE TO
PARTICIPATE AS *AMICUS CURIAE*

**NOTE ON MOTION CALENDAR:**
**September 10, 2021[1]**

## Motion

The National Police Association ("NPA"), a nonprofit entity formed to support law enforcement, moves for leave to participate in this case as *amicus curiae*. A supporting Declaration of Ed Hutchison is filed herewith. NPA's proposed memorandum *amicus curiae* in response to the City of Seattle's motion to dismiss this action is attached hereto as Exhibit 1.

## Memorandum

District courts have "broad discretion" to appoint amicus curiae. *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir.1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472, 115 S.

---

[1] NPA is aware that the City's motion to which its proposed filing relates is set for August 20, 2021, but sets the hearing date for this motion pursuant to the local rules on the theory that the question of City liability will not have been resolved by September 10th, and the Court may find the NPA's briefing helpful at that juncture or at such earlier time as the Court may wish to consider it.

1

James L. Buchal, WASB No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR 97286
Tel: 503-227-1011
Fax: 503-573-1939

1   Ct. 2293, 132 L.Ed.2d 418 (1995).  This Court has declared that it may consider amicus briefs

2   from non-parties "concerning legal issues that have potential ramifications beyond the parties

3   directly involved or if the amicus has unique information or perspective that can help the court

4   beyond the help that the lawyers for the parties are able to provide." *Skokomish Indian Tribe v.*

5   *Goldmark*, No. C13-5071JLR, 2013 U.S. Dist. LEXIS 151310, 2013 WL 5720053, at *1 (W.D.

6   Wash. Oct. 21, 2013) (internal quotations omitted) (quoting *NGV Gaming, Ltd. v. Upstream Point*

7   *Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005)).

8          The Federal Rules of Civil Procedure do not address *amicus* appearances before the

9   District Court.  NPA proceeds by analogy to the Federal Rules of Appellate Procedure to seek this

10   Court's permission to appear, and provides the following information, consistent with Rule 29 of

11   the Federal Rules of Civil Procedure.

12          NPA is not seeking to present any private interest of its own, but to present its position as

13   to the correct rules of law to be applied in cases involving police response to public protests and

14   demonstrations.  NPA is not aligned with any party in these cases but expects to present positions

15   in support of plaintiff.

16          This case is at an early stage.  Although the Complaint was filed on April 29, 2021, and

17   amended on July 12, 2021, it is currently subject to a motion to dismiss.

18          No prejudice to the parties will arise from allowing amicus participation.  NPA will not

19   participate in discovery; its participation will be limited to filing one or more legal memoranda.

20   NPA anticipates that, assuming the pending motion to dismiss is denied, a further motion for

21   summary judgment will be filed, and NPA proposes, consistent with FRAP 29(a)(6), to file any

22   further amicus briefs within seven days after plaintiff's filings.

23          That is precisely the procedure this Court has previously adopted:

24          "In the absence of local rules governing the role of amicus curiae, the court will
           adhere to the applicable rules found in the Federal Rules of Appellate Procedure.
25          Accordingly, the Proposed Intervenors must file any memorandum commenting on a
           party's memorandum no later than seven days after the party's principal brief is field.

26

27                                                     2

THE NATIONAL POLICE ASSOCIATION'S NOTICE OF MOTION AND
MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*
Case No. 2:21-cv-00571-JCC-JRC

28

James L. Buchal, WSBA No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011
Fax:  503-573-1939

1   *Ctr. for Biological Diversity v. United States EPA*, No. C13-1866JLR, 2014 U.S. Dist. LEXIS

2   20623, at *30 (W.D. Wash. Feb. 18, 2014).

3       This Court has frequently granted amicus status to associations akin to NPA.  *See, e.g., id.*

4   (granting amicus status to Western States Petroleum Association and the American Petroleum

5   Institute).  Amicus status is particularly appropriate where "the Court will consider issues of

6   particular public interest".  *Jewish Family Serv. of Seattle v. Trump*, No. 2:17-CV-01707-JLR,

7   2017 U.S. Dist. LEXIS 199900, at *3-4 (W.D. Wash. Dec. 5, 2017) (granting amicus status to

8   Muslim Advocates and the McArthur Justice Center).

9       NPA believes that its briefing will benefit the Court by providing a broader perspective

10  concerning the critical issues relating to a municipality's supplying, or declining to supply, police

11  protection service.  In particular, NPA takes the position that the proliferation of "stand down"

12  orders across the United States in the face of riots and other civil disturbances, where violence

13  against persons and property is all but certain to occur, but is accepted on account of the political

14  agendas of the rioters, infringe on the fundamental civil rights of Americans to live under ordered

15  liberty granted by the U.S. Constitution.

16                              **Conclusion**

17      For the foregoing reasons, NPA's motion for leave to participate *amicus curiae* should be

18  granted, allowing it to file the attached memorandum.

19      Dated this August 17, 2021.

20                                          By:  *s/ James L. Buchal*

21                                          James L. Buchal, WSBA No. 31369
22                                          MURPHY & BUCHAL LLP
                                            P.O. Box 86620
23                                          Portland, OR  97286
                                            Tel:  503-227-1011
24                                          E-mail:  jbuchal@mbllp.com
25                                          Attorney for National Police Association

26

27                                    3

28  THE NATIONAL POLICE ASSOCIATION'S NOTICE OF MOTION AND        James L. Buchal, WSBA No. 31369
    MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*                      Murphy & Buchal LLP
    Case No. 2:21-cv-00571-JCC-JRC                                            P.O. Box 86620
                                                                            Portland, OR  97286
                                                                            Tel:  503-227-1011
                                                                            Fax:  503-573-1939

1

2

HONORABLE JOHN C. COUGHENOUR
HON. J. RICHARD CREATURA

3

4

5

6

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

14

15

16

| DONNITTA SINCLAIR, Mother of Deceased HORACE LORENZO ANDERSON, JR., individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE, a municipality<br><br>Defendant. | Case No. 2:21-cv-00571-JCC-JRC<br><br><br>MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT CITY OF SEATTLE'S MOTION TO DISMISS |

17

**Preliminary Statement**

18

19

20

21

22

23

The National Police Association ("NPA") a nonprofit entity formed to support law enforcement, is interested in this case because police officers across the country watched with horror as the City abandoned an entire precinct and actively supported the creation of a lawless "CHOP" zone (1st Am. Cmplt. ¶ 2-4, 16-20), and a decision holding the City accountable for this extraordinary decision—and thereby discouraging such decisions in the future—promotes the interests of police, law enforcement generally, and the public interest.

24

25

26

NPA has obtained leave to file this memorandum through this Court's Order of _____, 2021.  The NPA certifies that no party to this case contributed any funds to prepare or submit this memorandum.

27

28

1

MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT
CITY OF SEATTLE'S MOTION TO DISMISS
Case No. 2:21-cv-00571-JCC-JRC

James L. Buchal, WASB No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011
Fax:  503-573-1939

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Summary of Argument**

Civil unrest may sometimes reach levels that requires law enforcement to retreat and abandon a precinct, but this case is about a deliberate decision to foster, contrary to the most fundamental Constitutional guarantees of ordered liberty, a zone of anarchy within the City of Seattle.  The City's abandonment of its most basic obligations under its own Charter, Washington state law, and the U.S. Constitution created extraordinary and foreseeable danger, and the false statements of City leaders concerning these dangers easily establish deliberate indifference to that danger for purposes of a Rule 12(b)(6) motion.  Plaintiff has stated a claim under the well-established "state-created danger" exception to the general rule that government will not be liable for the criminal acts of private parties.  Only a decision denying the motion to dismiss, and further proceedings leading to substantial liability for the wrongful death of Horace Anderson will ensure that local public officials never engage in conduct so destructive of the rule of law and law enforcement.

**Argument**

**I.      THE CITY'S MOTION TO DISMISS SHOULD BE DENIED.**

**A.      The Facts Pleaded, and Inferences to be Made.**

For purposes of reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court is to accept plaintiff's allegations as true "and construe them in the light most favorable" to the plaintiff, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), dismissing the complaint only if it fails "to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).   This involves "assuming all facts and inferences in favor of the nonmoving party" and dismissal is appropriate only "it appears beyond doubt that [plaintiff] can prove no set of facts to support [her] claims.'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003)).

2

MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT
CITY OF SEATTLE'S MOTION TO DISMISS
Case No. 2:21-cv-00571-JCC-JRC

James L. Buchal, WSBA No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011
Fax:  503-573-1939

Exhibit 1, pg. 2 of 8

The City's summary of the factual allegations might reasonably be seen as an attempt to draw inferences in favor of the moving party—itself.  For purposes of this motion, the most important allegation is that the "City enabled CHOP by providing portable toilets, lighting and other support, including modifying protocols of SPD and SFD".  (1st Am. Cmplt. ¶ 21.)  This factual allegation, coupled with the allegation that the Mayor and a City Council member falsely asserted that what was going on in CHOP constituted a "summer of love," a "block party," or a "peaceful" occupation (*id.* ¶¶ 27-28), permit the inference that the creation of a very large dangerous and lawless zone was a deliberate and affirmative policy decision of the City.  Indeed, this is the only reasonable inference.

Other allegations of extraordinary conduct on the part of City officials permit additional relevant inferences.  The Police Chief and the Mayor now both deny giving the order to desert the East Precinct in the first place, yet as plaintiffs allege, "someone in City leadership gave the order and numerous City officials allowed, enabled, ratified and even encouraged CHOP to continue despite the foreseeable danger and resulting violence".  (*Id.* ¶ 46.)  The City has apparently destroyed all records that would review the actual decisionmaking (*id.* ¶¶ 49-50), permitting the important interference that such records would be supportive of liability for the City and those involved.

All this conduct takes place against a background in which the relevant officials were under legal duties to do precisely the opposite of what they did.  It has long been the law in Washington that "[a] police officer not only has the specific duty to enforce the law, but is also charged with the general duty and power to maintain the peace and quiet of the city." *Mike v. Tharp*, 21 Wash. App. 1, 5, 583 P.2d 654, 656 (1978).  More specifically, the Seattle City Charter, like similar provisions across the country, requires the Chief of Police to "maintain the peace and quiet of the City".  (Charter, Art. VI, § 5.)

Seattle emphasizes that the primary purpose of the Due Process Clause invoked by plaintiff was "to protect the people from the State, not to ensure that the State protected them from each

3

MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT
CITY OF SEATTLE'S MOTION TO DISMISS
Case No. 2:21-cv-00571-JCC-JRC

James L. Buchal, WSBA No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR 97286
Tel: 503-227-1011
Fax:  503-573-1939

Exhibit 1, pg. 3 of 8

1  other". *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 196, 109 S. Ct. 998, 1003
2  (1989). The natural inference from plaintiff's complaint, however, is that the City was abusing
3  State power to advance the bizarre and illegal preferences of its leadership for anarchism, willfully
4  indifferent to serious and inherent dangers of anarchy.

5  The City's conduct should shock the conscience of this Court, sworn to uphold the rule of
6  law against anarchy, as it interferes with rights implicit in the fundamental Constitutional
7  guarantees of ordered liberty—the right to live in under constitutional government at least
8  attempting to preserve public order. Accordingly, plaintiffs' effort to seek redress in the
9  substantive context of the Due Process Clause is well within longstanding Constitutional
10  precedent. *Rochin v. California*, 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 183 (1952)
11  ("Substantive Due Process" prevents the government from engaging in conduct that "shocks the
12  conscience"); *Palko v. Connecticut*, 302 U.S. 319, 325-26, 58 S. Ct. 149, 82 L. Ed. 288 (1937)
13  (substantive due process violation occurs where state interferes with rights "implicit in the concept
14  of ordered liberty").

15  **B.  The "State-Created Danger" Doctrine Bars Dismissal.**

16  Notwithstanding the general rule articulated in *DeShaney*, the City does not dispute that
17  under the "state-created danger" exception, a three-part test applies to establish if plaintiff can
18  state a claim. Plaintiff must allege (and later prove) that: (1) the City's conduct exposed
19  plaintiff's son to "danger he would not have otherwise faced"; (2) the resulting harm was
20  foreseeable; and (3) the City acted with "deliberate indifference" to "the known or obvious
21  danger". (City Motion at 8.) At this juncture, the City challenges the sufficiency of the
22  allegations of the First Amended Complaint with respect to the first and third elements only. (*See*
23  *id*. at 8 n.1.)

24  This Court has already held that allegations indistinguishable from those presented by
25  plaintiff state a claim for damages arising out of the City's decision to allow, and thereafter

26

27

28

4

MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT
CITY OF SEATTLE'S MOTION TO DISMISS
Case No. 2:21-cv-00571-JCC-JRC

James L. Buchal, WSBA No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR 97286
Tel: 503-227-1011
Fax: 503-573-1939

Exhibit 1, pg. 4 of 8

1   support, the CHOP:  *Hunters Capital LLC v. City of Seattle*, 499 F. Supp. 3d 888, 898 (W.D.

2   Wash. 2020).

3               **1.       The City acted with deliberate indifference to the danger.**

4               It was obvious that allowing a hostile, lawless crowd attacking the East Precinct to take

5   control of sixteen blocks of Seattle would create lawlessness and resulting crime.  Plaintiff alleges

6   that "crimes predictably proliferated in CHOP" (1st Am. Cmplt. ¶ 22), and as early as June 11th,

7   only three days after the abandonment, the Police Chief expressed concern about crime and

8   response times (*id.* ¶ 26).  By the time of the visit plaintiff's son, on June 20th, the dangers posed

9   by CHOP were no longer a predication—they were an established fact.

10              The City argues that plaintiff has not alleged a "concrete, immediate danger".  (City

11  Motion at 10.)  That the City does not see the allegation of allowing a lawless and violent mob to

12  seize territory within the City as showing a concrete, immediate danger" only proves that the City

13  has learned nothing, and judgment in this case and others is required to educate the City as to its

14  fundamental obligations under federal constitutional law.

15              The City cites *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018), which

16  involved circumstances of more immediate state-created danger within the context of a single

17  demonstration on a single day, but the opinion focuses upon the conduct of particular group of

18  police officers.  Here, a high-level municipal policy decision to abdicate its own territory to

19  criminals obviously threatens a concrete and immediate danger to all those in the vicinity of the

20  territory.  *Hernandez* explains that the "critical distinction" for finding liability is not "between

21  danger creation and enhancement, but . . . between state action and inaction in placing an

22  individual at risk".  *Id.* at 1135.  Plaintiff does not merely allege inaction, but the affirmative

23  support of the CHOP zone and affirmative adoption of policies to foster lawlessness.

24              The City also argues that plaintiff has not alleged "that the City acted with indifference

25  regarding the dangers and risks that it did know about".  (City Motion at 10.)  That is simply not

26  true; "deliberate indifference" is specifically and repeatedly alleged.  (1st Am. Cmplt. ¶¶ 58, 64.)

27

28

5

MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT
CITY OF SEATTLE'S MOTION TO DISMISS
Case No. 2:21-cv-00571-JCC-JRC

James L. Buchal, WSBA No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011
Fax:  503-573-1939

1    The factual allegations of extraordinary indifference to anarchy, and abandoning the most

2    fundamental functions of civilized government, easily support an inference of deliberate

3    indifference.  Deliberate indifference may also be inferred from the fact that the wrongful death of

4    plaintiff's son on June 21st did not result in any change in City policy.  A second death had to

5    occur on June 29th (*id.* ¶ 43) before the City finally reversed its policy and began to close down

6    CHOP on July 1st (*id.* ¶ 48).

7                    **2.      The City exposed plaintiff's son to a danger he would otherwise not
                          have faced.**

8

9        This Court in *Hunters Capital* reviewed allegations concerning the City's fostering of

10   CHOP and easily concluded that "the City's actions—encouraging CHOP participants to wall off

11   the area and agreeing to a 'no response' zone within and near CHOP's borders—foreseeably

12   placed Plaintiffs in a worse position than they would have been in absent any City intervention

13   whatsoever."  *Hunters Capital*, 499 F. Supp.3d at 902.  It is certainly true that Lorenzo Anderson

14   might have encountered Marcel Long whether or not the City had created CHOP—though he may

15   well have been attracted to it by the City's promotion of a "summer of love" at the site.  But the

16   City's decision to create "no cop" zone increased crime generally; encouraged Long to carry a

17   handgun without consequence (*see* 1st Am. Cmplt. ¶¶ 24, 30); and its nonintervention policies

18   killed Anderson by letting him bleed out rather than disturb the sanctity of CHOP (*id.* ¶¶ 33-38).

19       The City's attempt to complain distinguish *Hunters Capital* on the basis that it was only a

20   "miscommunication" here that killed plaintiff's son ignores the very specific allegation of

21   increased response time (*id.* ¶ 26) this Court cited in *Hunters Capital* (*cf.* City Motion at 18).  The

22   question is not whether the son "would have been better off without City intervention (*id.* at 17);

23   the question is whether plaintiff has alleged that the City created a danger that injured her son—

24   and she has.

25       The City argues that the danger must be "particularized," but an increased risk of violent

26   crime is sufficiently particular for purposes of the "state-created danger" doctrine.  *Cf. Wood v.*

27

28

MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT
CITY OF SEATTLE'S MOTION TO DISMISS
Case No. 2:21-cv-00571-JCC-JRC

James L. Buchal, WSBA No. 31369
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011
Fax:  503-573-1939

1   *Ostrander*, 879 F.2d 583 (9th Cir. 1989) (general risk of stranding a woman in high crime area

2   sufficed).

3          There is no support for the City's position that the doctrine applies only where the state

4   creates a danger unique to the injured party.  That most state-created danger cases involve conduct

5   by single police officer or other state actor creating risk for an individual does not mean that the

6   doctrine is limited to such circumstances.  *Hunters Capital*, *Hernandez* and other cases all involve

7   dangers to multiple victims.  It is bizarre to suggest that the broader and more serious the danger

8   created by the City, the less remedy may be available for it.

9          The City goes so far as to suggest that *Hunters Capital* should be distinguished on the

10  basis that plaintiff's son—whose special needs may vitiate a presumption of ordinary voluntary

11  conduct—chose to go to CHOP.  No "state-created danger" case has made such a distinction, and

12  it is inconsistent with the holdings in such cases.  Under the City's view, for example, *Wood* was

13  wrongly decided:  the poor woman raped after being stranded when her male driver was arrested

14  for driving while intoxicated (and the car seized) "volunteered" to go driving with him.

15         Finally, the City elevates protection of property rights over human life in an astounding

16  fashion by suggesting that *Hunters Capital* should be distinguished, in substance, on the basis that

17  the plaintiffs there were complaining about non-enforcement of laws resulting in harm to their

18  property.  Whether the City as a matter of policy refused to enforce laws protecting property, or

19  refused as a matter of policy to enforce laws protecting life (other than intervening after the fact in

20  "life-threatening" circumstances) is a distinction without a difference.  The shocking conduct to

21  create either danger is sufficient to create a Substantive Due Process Claim.

22         **C.     Allowing the Claim to Proceed will not Erase Any Important Limit on**
               **Governmental Liability.**
23

24         The City ultimately retreats to the complaint that creating liability in this *sui generis* case

25  "would erase the limits on government liability established by the Supreme Court in *DeShaney*.

26  Those limits were created for governments that do not abdicate their most fundamental duties to

27                                                      7

28   MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT          James L. Buchal, WSBA No. 31369
     CITY OF SEATTLE'S MOTION TO DISMISS                                  Murphy & Buchal LLP
     Case No. 2:21-cv-00571-JCC-JRC                                          P.O. Box 86620
                                                                          Portland, OR  97286
                                                                          Tel:  503-227-1011
                                                                          Fax:  503-573-1939

1    preserve ordered liberty, and operate in a fashion that does not shock the conscience.  The City's

2    extraordinary and offensive policy choices challenged here are policies that the federal judiciary

3    should not only feel no need to protect, but has an affirmative duty to eradicate.

4                                              **Conclusion**

5         For the foregoing reasons, the City of Seattle's Motion to Dismiss should be denied.

6         Dated this _____, 2021.

7                                        By:  *s/ James L. Buchal*

8
                                         James L. Buchal, WSBA No. 31369
9                                        MURPHY & BUCHAL LLP
                                         P.O. Box 86620
10                                       Portland, OR  97286
                                         Tel:  503-227-1011
11                                       E-mail:  jbuchal@mbllp.com
                                         Attorney for National Police Association
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                            8

28   MEMORANDUM *AMICUS CURIAE* IN OPPOSITION TO DEFENDANT          James L. Buchal, WSBA No. 31369
     CITY OF SEATTLE'S MOTION TO DISMISS                           Murphy & Buchal LLP
     Case No. 2:21-cv-00571-JCC-JRC                                P.O. Box 86620
                                                                   Portland, OR  97286
                                                                   Tel:  503-227-1011
                                                                   Fax:  503-573-1939