UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONNITTA SINCLAIR, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SEATTLE, <br><br> Defendant. | CASE NO. 2:21-cv-00571-JCC-JRC <br><br> REPORT AND RECOMMENDATION <br><br> NOTED FOR: October 8, 2021 |

This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Before the Court is defendant's motion to dismiss. Dkt. 12.

Plaintiff Donnitta Sinclair is the mother of Horace Lorenzo Anderson, Jr., a 19-year-old with special needs. Mr. Anderson was shot and killed by a person with whom he had a "history of antagonism" when he visited a protest-occupied area that came to be known as the Capitol Hill Organized Protest ("CHOP") in the City of Seattle. Plaintiff brings a single 42 U.S.C. § 1983 claim seeking to hold defendant City of Seattle ("the City") liable for her son's death under

the Substantive Due Process Clause of the Fourteenth Amendment. Plaintiff alleges that the City's actions and failures to act regarding CHOP created a foreseeable danger for her son and that the City was deliberately indifferent to that danger.

After reviewing the briefing and the relevant record, the Court concludes that plaintiff's alleged facts, even if taken as true, do not satisfy a substantive due process claim. Specifically, plaintiff has not alleged facts that the City created an actual, particularized danger for Mr. Anderson. Furthermore, plaintiff has not alleged facts that the City was deliberately indifferent to a known or obvious danger. Therefore, the Court recommends that plaintiff's amended complaint be dismissed with prejudice.

## BACKGROUND

### I. Amended Complaint

One June 8, 2020, the City allegedly "abandoned" the Seattle Police Department's ("SPD") East Precinct. Dkt. 8 at 3. Protesters then used barricades left behind by the SPD to block traffic and "seized a roughly sixteen-block area of Capitol Hill, including Cal Anderson Park." *Id.* This area was known as CHOP. *Id.* Plaintiff alleges that CHOP participants were seen carrying guns at all hours and violence, vandalism, open drug use, and a collection of other crimes proliferated in the area. *Id.*

According to plaintiff, the City did not have an "effective plan" to provide police protection or emergency services in CHOP, but it provided portable toilets, lighting, and other support, including modifying protocols of SPD and SFD. *Id.* On June 11, 2020, SPD Chief Carmen Best allegedly stated that "response times for crimes in progress were over 15 minutes, about three times as long as the average . . . ." *Id.* at 4. That same day, in an interview with CNN,

the Mayor stated that CHOP was a "block party" and characterized the events as "a summer of love." *Id.*

On or about June 20, 2020, plaintiff's "19-year-old special needs son," Mr. Anderson, visited CHOP and encountered Marcel Long. *Id.* at 2, 4. The two "had a history of antagonism." *Id.* at 4. According to plaintiff, Mr. Long believed CHOP was a "no-cop" zone and was carrying a gun. *Id.* After speaking with each other, Mr. Long pulled out the gun. *Id.* Mr. Anderson then walked away while Mr. Long was briefly held back by others. *Id.* According to plaintiff, Mr. Long caught up to Mr. Anderson and shot him "at least four times." *Id.*

CHOP participants carried Mr. Anderson to a "medical tent" they had created in an outdoor area just outside of Cal Anderson Park. *Id.* at 3–4. According to plaintiff, Mr. Anderson "apparently had a pulse when they laid him down on a table." *Id.* at 4. SFD allegedly had an ambulance standing by about a block and a half from Mr. Anderson's location. *Id.* According to plaintiff, a man implored the medics to help Mr. Anderson, but the medics were "apparently waiting for a green light from SPD, but SPD was confused about the location of SFD and medics." *Id.* at 4–5. The miscommunication caused a response delay of approximately 20 minutes. *Id.* at 5.

By the time the police entered the area, CHOP participants had transported Mr. Anderson to Harborview in a pick-up truck where he was pronounced dead at 2:53 a.m. *Id.* According to plaintiff, two other people were shot in CHOP on June 29, 2020. *Id.* Prior to the establishment of CHOP there were no homicides in the area for six months, and three homicides in 2019. *Id.*

**II.     Motion to Dismiss**

Plaintiff's amended complaint contains one cause of action based on the Fourteenth Amendment's Due Process Clause. Dkt. 8. On July 28, 2021, the City filed a motion to dismiss

that claim. *See* Dkts. 8, 12. Plaintiff subsequently filed her response and the City filed a reply. *See* Dkts. 13, 20. On August 30, 2021, the Court granted the National Police Association's motion for leave to file a memorandum of *amicus curiae* in opposition to the City's motion to dismiss. Dkts. 16, 22, 23. The City filed a response on September 3, 2021. Dkt. 24.

## DISCUSSION

### I.  Legal Standards

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Id.*; *Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir. 2012). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Ballistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570). The pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. While the Court must accept all the allegations contained in a complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.*

///

## II. Substantive Due Process Claim

Municipalities, like the City, are only liable under § 1983 if the constitutional violation was the result of a municipal policy. *See Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 691 (1978). Plaintiff brings one cause of action under § 1983, alleging that the City violated her Fourteenth Amendment Due Process rights by failing to protect her son from Mr. Long. *See* Dkt. 8 at 7–8. The general rule is that "members of the public have no constitutional right to sue [state actors] who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs (Grubs I)*, 974 F.2d 119, 121 (9th Cir. 1992) (citing *DeShaney v. Winnebago Cty., Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). One exception to that rule is referred to as the "state-created danger doctrine." *Martinez v. Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). To succeed in such a claim, a plaintiff must establish that (1) the state actor's affirmative actions created or exposed him to "an actual, particularized danger that [he] would not otherwise have faced," (2) that the injury he suffered was foreseeable, and (3) that the state actor was "deliberately indifferent to the known danger." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).

In its motion to dismiss, the City challenges the first and third elements only.

### A. Actual, Particularized Danger

In determining whether a state actor placed a person in danger, courts do not look at what options may have been available to a defendant to make the area safer. *Martinez v. Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). "Instead, [courts] consider 'whether the [state actor] left the person in a situation that was more dangerous than the one in which they found' her." *Id.* (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006)).

Ninth Circuit cases regarding state-created danger involve situations where the state actors placed a specific person or group in a dangerous situation. *See Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (police officers ordered plaintiff, a particular female passenger, out of a vehicle and left her stranded in an area with a high violent crime rate); *Munger v. City of Glasgow Police Dep't.*, 227 F.3d 1082 (9th Cir. 2000) (police officers ordered plaintiff out of a bar, into freezing temperatures, and further ordered him not to drive his vehicle*); Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (police encounter a man on the porch of his home displaying serious medical symptoms but cancel a 911 call already placed by his neighbors, bring him into his house, and leave him there alone, where he dies); *Hernandez*, 897 F.3d 1125 (police officers ordered a particular group of rally attendees to exit through an area where a group of violent protestors were located).

		Here, plaintiff does not allege that the actions by the City that allegedly created the dangers in CHOP were specific to Mr. Anderson. Plaintiff fails to allege any contact between Mr. Anderson and any City police officer or, indeed, any representative of the City prior to the incident in question. In fact, it appears that Mr. Anderson entered CHOP on his own accord days after the creation of CHOP. Plaintiff does not allege that defendant knew that Mr. Anderson and Mr. Long had a history of antagonism or that they would encounter each other in CHOP. While plaintiff alleges a *general* risk of increased gun violence at CHOP, it was not a *particular* risk to Mr. Anderson. Therefore, the City's alleged actions did not increase the danger to him specifically, which is a requirement for liability to be imposed. *See Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007) (holding that plaintiffs failed to show that the City "enhanced the dangers the [plaintiffs] exposed themselves to" by choosing to enter the crowd).

1    Plaintiff acknowledges that Ninth Circuit cases uniformly involve state actors creating
2  risk for a specific person or group, but argues that "the doctrine is not limited to such
3  circumstances." Dkt. 13, at 6. However, plaintiff does not point to, and the Court is not aware of,
4  any cases that support that position. Therefore, plaintiff has not alleged facts to support her claim
5  that the City created an actual, particularized danger for Mr. Anderson.

### B. Deliberate Indifference

7    "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal
8  actor disregarded a known or obvious consequence of his action.'" *Patel v. Kent School Dist.*,
9  648 F.3d 965, 974 (9th Cir. 2011) (quoting *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). It
10 "requires a culpable mental state," and the "standard [the Court] appl[ies] is even higher than
11 gross negligence." *Id.* (citing *L.W. v. Grubbs (Grubbs II)*, 92 F.3d 894, 898–90 (9th Cir. 1996)).
12 To claim deliberate indifference, plaintiff must allege facts demonstrating the City "recognize[d]
13 [an] unreasonable risk and actually intend[ed] to expose [plaintiff] to such risks without regard to
14 the consequences to [plaintiff]." *Id.* (quoting *Grubbs II*, 92 F.3d at 899). In other words, the City
15 must have known that something was going to happen but chose to ignore the risk and expose
16 plaintiff to it anyway. *Id.*

17    For example, in *Hernandez*, the Ninth Circuit held that police officers acted with
18 deliberate indifference to a known and obvious danger when they directed Donald Trump rally
19 attendees into a violent crowd of "anti-Trump protesters." 897 F.3d at 1136. The officers also
20 "actively prevented" the attendees from leaving through exits away from the crowd. *Id.* at 1129.
21 Important to the Court's analysis was the fact that the officers "were not only aware that Trump
22 rallies had drawn violent crowds in the past but had also received reports of violence on the day
23 of the Rally and witnessed the violence firsthand during the Rally." *Id.* In other words, the

officers "knew the anti-Trump protesters posed an immediate threat to the [a]ttendees." *Id.* at 1136.

In contrast, the Ninth Circuit did not find deliberate indifference for a teacher's failure to supervise a student because the teacher did not know the student was in "immediate danger." *Patel*, 648 F.3d at 975–76. In *Patel*, the Court held that although the teacher knew the student required supervision and that the student had been "involved in past bathroom incidents," the teacher did not know the details and she was not otherwise aware of "any immediate danger in allowing [the student] to briefly use the next-door bathroom alone." *Id.* The Court concluded that "no rational factfinder could conclude that [the teacher] acted with deliberate indifference to [the student's] safety and well-being." *Id.* at 976. However, the Court stated that the results may have differed if the teacher knew the two students were about to enter the bathroom and "stood idly by." *Id.* at 975.

Here, the facts alleged, taken as true, do not support a claim for deliberate indifference. Unlike the officers in *Hernandez*, plaintiff does not allege that the City was aware of any shootings in CHOP prior to June 20, 2020. In fact, plaintiff alleges that there were no homicides in the area for six months. Dkt. 8 at 5. Plaintiff argues that the City should have nonetheless recognized the general danger "of cutting off essential services and creating a 'no-cop zone' in an urban area." Dkt. 13 at 7. However, even if that could support a claim for deliberate indifference, according to plaintiff's alleged facts, the City did not cut off essential services because SPD had a policy of entering the area for "life-threatening crimes" and had an ambulance "standing by about a block and a half away." Dkt. 8 at 3–4. Furthermore, plaintiff alleges that SPD responded and entered CHOP "approximately 20 minutes after the shooting." Dkt. 8 at 5.

1    Plaintiff also argues that despite comments by city officials that CHOP was "peaceful," a
2 "summer of love," and a "block party," the City knew of the danger CHOP presented because on
3 June 11, 2020, SPD Chief Carmen Best publicly stated that "[in] the first day of SPD not having
4 access to the precinct, response times for crimes in progress were over 15 minutes, about three
5 times as long as the average . . . ." Dkts. 8 at 4; 13 at 7. However, plaintiff does not allege that
6 those response times were limited to crimes that occurred in CHOP. And like the defendant in
7 *Patel*, the fact that the City may have known about some crimes or delays in response times,
8 does not mean that it knew Mr. Anderson, in particular, was in "immediate danger." *Patel*, 648
9 F.3d at 975–76. Deliberate indifference requires the City to recognize an "unreasonable risk and
10 actually intend[] to expose [plaintiff] to such risks without regard to the consequences to
11 [plaintiff]." *Id.* at 974. Plaintiff has not alleged facts to support such a claim.

### C. Recent District Court Decision

13    Though not binding on this Court, the parties, including *amicus curiae*, devoted portions
14 of their briefing on the recent District Court decision in *Hunters Capital v. City of Seattle*, 499 F.
15 Supp. 3d 888 (W.D. Wash 2020). *Hunters Capital* also involved incidents related to CHOP and
16 the District Court held that the business and property owners located within CHOP had alleged
17 facts sufficient to state a substantive due process claim under the state-created danger exception.
18 *Hunters Capital*, 499 F. Supp. 3d at 902. But the facts alleged in *Hunters Capital* are
19 distinguishable from this matter.
20    The plaintiffs there alleged that the City had agreed to a "no-response" zone "after
21 negotiating with CHOP participants." 499 F. Supp. 3d at 902. As a result, the plaintiffs alleged
22 that emergency personnel *refused* to respond to 9-1-1 calls made from within or near CHOP—
23 some of which were made by the plaintiffs themselves. *Id.*

Regarding an actual, particularized danger, unlike Mr. Anderson, the plaintiffs in *Hunters Capital* were permanently in the area when CHOP was created and the City allegedly refused to respond to their 9-1-1 calls regarding property damage. Therefore, the alleged risk that was created by the City was sufficiently particularized to each of the plaintiffs in *Hunters Capital*. Allegedly, the City knew of each of the plaintiff's concerns, and chose to ignore them. Here, plaintiff alleges that Mr. Anderson, on his own accord, chose to enter CHOP days after it was created and encountered a person who he already knew and with whom he had "a history of antagonism." Therefore, the City did not create this particular set of circumstances that led to his death.

Regarding deliberate indifference, plaintiff does not allege that the City had a "no-response" policy like the plaintiffs alleged in *Hunters Capital*. Instead, plaintiff alleges that defendant's policy of only responding to "life-threatening crimes" was not "effective." Dkts. 8 at 3; 13 at 7. Also, unlike the plaintiffs in *Hunters Capital*, plaintiff does not allege that emergency personnel refused to respond to calls for assistance, but rather that a miscommunication between agencies caused a delay in their eventual response. Dkt. 8 at 5. These differences are important because "[d]eliberate-indifference cases are by their nature highly fact-specific . . . ." *Patel*, 648 F.3d at 975.

## CONCLUSION

For the reasons set forth above, the Court recommends that the City's motion to dismiss be granted and plaintiff's amended complaint be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

1  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

2  objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

3  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

4       Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

5  matter for consideration on **October 8, 2021** as noted in the caption.

6       Dated this 21st day of September, 2021.

                                                                       J. Richard Creatura
Chief United States Magistrate Judge